Burket, J.
By the act of March 12, 1853, it was provided that a board of county commissioners should be established in each county to consist of three persons to be elected at the annual election in October of each year, to hold their offices for three years. The date at which the term of office was to begin was not fixed, and the practice was that each commissioner took his office as soon as he qualified after election.
*509 By the act of March 7, 1873, 70 O. L., 53, it was provided that the term of office should begin on the first Monday of December next after his election, and this became section 839 of the Revised Statutes.
By the amendment of this section in 1886, 83 O. L., 198, the term was so changed as to begin on the first Monday of January next after his election; and by the further amendment of the same section, May 19, 1894, 91 O. L., 338, the beginning of the term of each commissioner was changed to the third Monday of September next after his election.
No question was made as to the constitutionality of any of those acts until now. Under this last change from the first Monday of January to the third Monday in September, the probate judges, auditors, and recorders of the different counties re' garded the interim from January to September as a vacancy in the office, and filled the same by appointment. In the former changes the interim was so short that it was disregarded.
Under this section as amended in May, 1894, a county commissioner was elected in each county at the November election in 1894, and his term began on the third Monday of September, 1895. At the November election in 1895, a commissioner was elected whose term began on the third Monday of September, 1896; and at the November election in 1896 a commissioner was elected whose term began on the third Monday of September, 1897: As to each of the commissioners so elected in the years 1894, 1895, and 1896, there was an interim in the office from the first Monday in January to the third Monday in September, and this interim was regarded as a vacancy by the probate judges, auditors and recorders, and such vacancy was filled *510 by them by appointment of some person in each county to discharge the duties of commissioner for the time of such vacancy. The last vacancy so filled or which could be so filled was from the first Monday in January, 1897, to the third Monday in September following.
The commissioners who were elected in November, 1894, and whose terms began on the third Monday in September, 1895, and expired on the third Monday of September, 1898, were succeeded by commissioners who were elected in November, 1897, and the commissioners whose terms will expire in September, 1899, will be succeeded by the commissioners who were elected in November, 1898. So that two elections of commis- • sioners were had after the illegal vacancies or interims had been done away, and the commissioners elected in November, 1897, had taken their offices in September, 1898, and had held the same for over-one year, when the question as to the illegality of these vacancies, and the constitutionality of the act, by reason of such vacancies, was first made. Conceding the invalidity of such vacancies and of the act creating the same, as was held in State ex rel. v. Heffner, 59 Ohio St., 368, and State ex rel. v. Canary, 60 Ohio St., 208, the action to declare such invalidity by reason of such illegal vacancies, should have been brought while such illegal vacanbies existed, and to oust a person who was filling such illegal vacancy. After the attorney-general and all the people of the state have remained quiet, and acquiesced in the filling of such illegal, vacancies until after the terms of such vacancies-have expired, and until all the persons now in office are there, not by virtue of an illegal appointment to fill an illegal vacancy, but by virtue of an elec *511 tion by the people to fill a full and regular term of office, it is too late to raise the question by quo warranto as to the illegality of such vacancies and appointments, or the statute from which such vacancies resulted.
Had the question been properly made before these illegal vacancies and appointments all expired, there would have been some substance to the claim, something to act upon, somebody to oust from office. That has now all gone by, and the illegality growing out of the vacancies caused by this change of the statute, no longer exists, and the invalidity of the statutes should not be construed to extend beyond the illegality which caused it. The illegal vacancies caused the invalidity of the statute while these vacancies existed, but the illegal vacancies having expired, they no longer operate to invalidate the statute.
Aside from creating such illegal vacancies, there is nothing in the constitution to prevent the general assembly from fixing the date at which the term of office of a county commissioner shall begin, and such illegal vacancies having expired and become inoperative before any proceedings were commenced by the state or any citizen thereof to declare the statute invalid by reason of such illegal vacancies, sound policy requires that the statute' shall now stand and operate the same as if no such illegal vacancies had resulted therefrom. Advantage must be taken of such a statute while the illegality is alive and doing- harm, and not after it is dead and without operation to harm any one.
But as Mr. Brown, the defendant, was appointed to fill one of those illegal vacancies from the first Monday in January, 1896, to the third Monday of September, when he entered upon his full term of *512 three years to which he had been elected in November, 1895, it is claimed by the relator that the time served by Mr. Brown in filling this illegal vacancy must be counted as part of his full term of three years, and that in legal effect his three years’ term began on the first Monday in January, 1896, and ended on the first Monday of January, 1899. This claim is not tenable. Mr. Brown was appointed to fill the vacancy. He gave bond and qualified to fill the vacancy, was so commissioned, and . did not claim to be then in office on his full term of three years, and had not then given bond or qualified on his three years’ term. If anybody desired to test the legality of his appointment to this vacancy, an action should have been commenced to oust him before the vacancy expired, and not wait for three years, and then by a sharp turn attach the time served to fill the vacancy to his full term, and thereby bring his full term to an end some eight months earlier than was expected by either himself or the public. His regular term will therefore continue to the third Monday of September, 1899, at which time Mr. McKenney’s term will begin.
■ This is a proceeding- by the attorney-general to oust Mr. Brown from office, and not to induct Mr. McKenney into office. Therefore the facts set up in the answer, as to Mr. McKenney’s having held the office of councilman of one of the wards of the city of Cleveland at the time of his election as commissioner in November, 1898, are not pertinent in this case; but we see nothing to render him ineligible to the office.

Petition dismissed.